F. E. Meyer v. Commissioner.
Meyer v. Commissioner
Docket No. 34221.
United States Tax Court
T.C. Memo 1955-271; 1955 Tax Ct. Memo LEXIS 66; 14 T.C.M. (CCH) 1072; T.C.M. (RIA) 55271; September 30, 1955
Edward C. Mogren, Esq., for the petitioner. George E. Van Roekel, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in income tax against the petitioner for the years 1948 and 1949 in the respective amounts of $34 and $443. The deficiency for 1948 and a part of the deficiency for 1949 result from the determination by the respondent that petitioner failed to report interest payments of $180 received in each of those years. While error was alleged as to the respondent's determination that petitioner failed to report interest received, no evidence was offered and no argument has been made thereon. We accordingly regard the issue as abandoned. The only other issue is whether the petitioner *67 sustained a loss in 1949 of $6,340 claimed to have been expended over an extended period of years in an effort to perfect a patented card punching device. Findings of Fact Petitioner is a resident of St. Paul, Minnesota. He filed his income tax returns for the calendar years 1948 and 1949 with the collector of internal revenue for the district of Minnesota. Petitioner has been employed by the Northern Pacific Railroad as a clerk in the Revised Rates Division and associated departments in freight accounting since 1920. His job has been concerned primarily with the auditing and tabulation of freight receipts. In 1920 the railroad was using machines for tabulating purposes with respect to these freight receipts which it rented from International Business Machine Corporation, herein referred to as IBM, for approximately $100 a month. The tabulating machines recorded information by means of small holes which were punched on the cards. Petitioner conceived the idea of inventing a card punching device which could be attached to any ordinary typewriter so that the typewriter could be used to tabulate information by means of punching cards in addition to typing other information on the *68 cards. Petitioner purchased an old hand punching machine from a former IBM employee, and had a machinist alter and adapt it to a typewriter for him. Petitioner applied for, and on December 19, 1922, was issued a patent on this machine. The machine on which petitioner acquired the patent in 1922 had certain functional defects which prevented the successful manufacture of the machine until they were overcome. For this reason, during the years from 1922 to about 1941, petitioner took the machine to various machinist and machine shops in an attempt to have the defects corrected. The principal difficulty with the machine as originally designed was that it required an extremely hard stroke on the typewriter key in order to make the device punch a hole in the card. This was eventually overcome by one of the machinists who worked on the machine, by installing a "toggle motion" on the device which made it easier to punch a hole in the card. After the change, however, the punching device would stick in the card and the key would not return to its normal position. This difficulty was overcome by another machinist who installed springs under the keys, but this change brought back the original *69 trouble, inasmuch as the pressure of the spring had to be overcome in striking the keys and it again required an extremely hard stroke of the typewriter key in order to make the device punch the card. Sometime prior to 1941, presumably in 1939 or 1940, a man named Kraft altered the working model of the machine so that it operated electrically. This eliminated much of the difficulty which had previously been experienced, but the machine was still not perfected and required further work. Petitioner and Kraft applied for, and on January 14, 1941, were issued a patent on the electrical machine. Kraft subsequently assigned his interest in the patent to petitioner. In 1942, petitioner had some additional work done on the machine to put it in"good operating form," but this was not accomplished and the machine was never perfected. Petitioner tried unsuccessfully to acquire backing to perfect the machine, or to sell it and the patent outright. In 1934 or 1935, petitioner contacted an attorney in Detroit, Michigan, who suggested that the way to secure backing for the machine was to form a corporation and sell stock. Acting on this suggestion, petitioner had the attorney form a Delaware corporation, *70 known as the Universal Card Accounting Machine Corporation, and subsequently had a broker in New York prepare and file a prospectus for the anticipated issue of stock with the Securities and Exchange Commission. The corporation never sold any stock or performed any corporate function; it was abandoned by petitioner, and on July 1, 1938, became inoperative and void for nonpayment of taxes under Delaware law. After petitioner abandoned the corporation, he made further trips to New York, Detroit, Chicago and other places for the purpose of interesting people in the machine, but he never found a backer or buyer. In 1947, petitioner made a trip to Chicago and discussed his machine with various people. From these discussions, petitioner was made aware that his machine, even if perfected, was and for several years had been antiquated and outmoded. On his income tax return for 1949, petitioner claimed a loss deduction of $6,340 for expenditures made "in perfecting the [second] patent and attempting to establish a manufacturing agency to manufacture and sell the product," as follows: 1926
Labor on machine
$ 650
1928
Machine work on machine
400
1930
Labor on machine
600
Attorney fees - patent
1,000
1932
Machine work on machine
400
1937
Labor on machine
800
1938
Incorporation of Universal Card
Punching Machine Corporation
325
Prospectus and Report
950
1941
Attorney fees - patent
300
1942
Labor on perfecting and building
machine
915
$6,340
*71 Opinion Petitioner claimed a deduction of $6,340 for the year 1949 as a result of his alleged abandonment of a card punching machine which he, with the assistance of others, had invented and the two patents which had been issued thereon. It is his contention that it was not until 1947 or 1948 that he acquired information which convinced him that his invention was obsolete and worthless and that on the basis of such information he abandoned the invention and patents in 1949, and that such abandonment was the controlling factor in determining his loss. Section 23(e) of the Internal Revenue Code of 1939 provides for the deduction from gross income of losses by individuals "sustained during the taxable year and not compensated for by insurance orotherwise," if incurred in trade or business, or if incurred in any transaction entered into for profit, though not connected with the trade or business. It is well settled that the criterion for the deductibility of a loss is not the taxpayer's ascertainment of such loss, but when the loss is in fact sustained. Lemuel S. McLeod, 19 B.T.A. 134; S. G. Armstrong, 24 B.T.A. 321; and American Multigraph Co. et al., 10 B.T.A. 406.
*72 The machine which petitioner conceived and with the help of other parties designed and built in the early 1920's was created for needs existing at that time and was meant to compete with other machines designed for a similar purpose and in existence at that time. Petitioner's machine, although patented, could not be operated, due to functional defects which were not overcome until almost twenty years later, when the machine was altered so as to operate electrically. While the electrification of the machine in 1941 overcame some of the functional defects of the earlier machine, it was still not perfected to the point where it could be manufactured and sold, and, more important, had no greater utility than the original machine which, as we have pointed out, was designed to answer the needs of tabulating information in the early 1920's. Such facts, together with the repeated unsuccessful attempts on the part of the petitioner to secure either backing to finance the production of a workable machine or the outright sale of the machine itself and the patents thereon, for some twenty years, are compelling evidence that the machine was worthless years prior to 1949, or even 1947. Information *73 which petitioner claims to have acquired in 1947, indicating to him that his machine was obsolete, appears from the evidence of record to have been available to him many years prior thereto. Moreover, it appears that the petitioner might well have been aware of the worthlessness of the machine much earlier than he now claims, for prior to 1942, petitioner actively sought to perfect, promote and produce the machine, but subsequent to that year, there is no evidence of any activity with respect to the machine except for the trip in 1947, when petitioner claims to have had discussions with "various people" in Chicago, from which he became apprized of the worthlessness of his machine. It is our conclusion, on the record as a whole, that petitioner's invention was obsolete and worthless prior to 1949, and that any loss sustained as a result of such worthlessness is accordingly not deductible in that year. Decision will be entered for the respondent.